KIBLER FOWLER & CAVE LLP
John D. Fowler (SBN 271827)
jfowler@kfc.law
Kevin J. Cammiso (SBN 316540)
kcammiso@kfc.law
Zien Halwani (SBN 322040)
zhalwani@kfc.law
11100 Santa Monica Blvd., Suite 360
Los Angeles, California 90025
Telephone:   (310) 409-0400
Facsimile:   (310) 409-0401

*Attorneys for Italia Film International SAL*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ITALIA FILM INTERNATIONAL SAL, a Lebanese joint stock company,<br><br>Plaintiff,<br><br>v.<br><br>ARCLIGHT FILMS INTERNATIONAL PTY LTD, a California limited liability company; GARY HAMILTON, an individual,<br><br>Defendants. | CASE NO. 2:24-cv-491<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF ORAL CONTRACT**<br>2. **BREACH OF GUARANTY AGREEMENT**<br>3. **FRAUD - INTENTIONAL MISREPRESENTATION**<br>4. **PROMISSORY ESTOPPEL**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Italia Film International SAL, demanding trial by jury, complains and alleges on information and belief as follows:

## INTRODUCTION

1. Defendant Arclight Films International Pty Ltd. and its President Gary Hamilton abused a longtime relationship with Italia Film, the largest film distributor in the Middle East, inducing it to loan an affiliated Australian production company, Killer 10 Holdings Pty Ltd., $500,000.

2. Arclight and Hamilton induced Italia Film to make the loan by promising to pay it back (including an investment premium) on behalf of its Australian affiliate—even signing a written guaranty agreement. But the $500,000 that was meant to secure an esteemed director for the production of a $50 million picture was never put to use.

3. Year after year (from 2016 to 2023) Killer 10 Holdings failed to produce the picture and Italia Film was never paid back. Meanwhile, Hamilton promised payment was forthcoming *from Arclight* each year, including in writing as recently as August 5, 2023. But payment was never made and Italia Film's patience and trust in its longtime partner ran out, necessitating the filing of this lawsuit.

## PARTIES AND VENUE

4. Italia Film is a Lebanese joint stock company with its principal place of business at Beirut, Lebanon. Italia Film has been the premier film distributor in the Middle East for more than half a century.

5. Upon information and belief, Arclight is a California limited liability company with its principal place of business in Beverly Hills, California.

6. Upon information and belief, Gary Hamilton is an individual residing in Los Angeles County, California.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 because the parties are completely diverse and

the amount in controversy exceeds $75,000. Italia Film is domiciled in Lebanon. Arclight and Hamilton are domiciled in California.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Arclight and Hamilton are domiciled in Los Angeles County.

## GENERAL ALLEGATIONS

9. In or around September 2016, Italia Film loaned Killer 10 Holdings $500,000 to secure director Phillip Noyce for the production of *Killer 10*, a World War II historical action film with an anticipated budget of $50 million. Arclight promised Italia Film that *Killer 10* would be produced in 2016 and that this loan would be paid back on or before the first day of principal photography. Arclight also promised that Italia Film would be paid a 20% investment premium in addition to the $500,000 and that this premium would increase to 25% if full repayment was not made within 9 months after release of the money to Mr. Noyce.

10. Upon information and belief, Arclight induced Italia Film to loan its affiliate Killer 10 Holdings this $500,000 because it stood to profit from the loan, namely by exploitation of *Killer 10*.

11. In or around October 2016, Mr. Noyce entered a hold agreement deal memo with Killer 10 Holdings, which promised to pay him $500,000 within five business days. It is unclear whether he received all of this money, or whether Arclight simply pocketed a portion of it.

12. It subsequently became clear that Killer 10 Holdings would not produce *Killer 10* in 2016 and would not pay Italia Film back before the end of 2016. So, on or about December 15, 2016, Arclight entered into a written guaranty agreement with Italia Film promising that its repayment of the loan would "not take place any later than … 30 September 2017."

13. Given Arclight's longstanding relationship with Italia Film's iconic founder, Giuseppe Vincenti, Italia Film was willing to provide leeway on the loan repayment terms, including modification of the agreements between the parties to

permit performance/repayment at a later date. Italia Film has also released dozens of Arclight films over the years and continues to do so with older titles.

14. Following Killer 10 Holdings' failure to produce the film in 2016 and 2017, Arclight repeatedly promised Italia Film that production was forthcoming and that it would be paid, and the parties repeatedly agreed to orally modify both the original September 2016 oral contract and the December 2016 written guaranty agreement based on these promises. As Killer 10 Holdings repeatedly failed to produce *Killer 10*, Arclight continued to promise that production was forthcoming within the year and that Italia Film would be paid, and the parties continued to orally modify the contracts to permit later performance. This occurred in 2018, 2019, 2020, 2021 and 2022. Aside from providing flexibility based on the long term relationship between the parties, these ongoing amendments were logical as films often take longer to make than anticipated.

15. Italia Film trusted Arclight because of its longstanding relationship with its founder, Giuseppe Vincenti and at all relevant times refrained from filing suit against Arclight for breach of oral contract and breach of the written guaranty in accordance with the parties' later agreements/modifications.

16. In or around September 2021, Arclight promised Italia Film that it would pay back the loan by reducing fees related to three specific Arclight films, *Portable Door*, *Poker Face*, and *Deep Water*. Italia Film agreed that repayment could also be made in this manner, again modifying the agreements between the parties, which included later repayment.

17. In or around 2022, Arclight made a partial payment to Italia Film in the form of a $100,000 reduction of fees otherwise due to Arclight related to the film *Poker Face*. However, none of the other promised reductions took place.

18. On October 3, 2022, in advance of the 2022 American Film Market ("AFM") event in Santa Monica, Hamilton again promised Italia Film that *Killer 10* would be produced the following year, and that Italia Film would be repaid at that

1  time. Hamilton wrote to Italia Film's managing director, Carlo Vincenti, "I want
2  you to know I have every intention next year to make a repackaged KILLER 10,"
3  promising payment (in writing) by early 2023.

4      19.    In early November 2022, Hamilton met with Mr. Vincenti, Hamilton's
5  wife Ying, and Hamilton's son Ryan at the 2022 AFM event in Santa Monica. At
6  this meeting, the parties entered the most recent oral modification of the agreements
7  between them and agreed that Arclight would pay Italia Film its $500,000 and the
8  promised premium within a year, *i.e.*, by early November 2023.

9      20.    Over the next several months Hamilton became increasingly difficult to
10  reach. On August 5, 2023, Hamilton sent an email to Mr. Vincenti apologizing for
11  the "delay" and promising that production of *Killer 10* and payment to Italia Film
12  would occur in the first quarter 2024 in breach of the final oral modification of the
13  parties' agreements.

14      21.    This was nothing but further empty promises. As a result, it is now
15  clear that Arclight and Hamilton were stringing Italia Film along, taking advantage
16  of Hamilton's relationship with Giuseppe Vincenti with no intention of ever paying
17  the debt. Italia Film accordingly brings this lawsuit to finally put an end to their
18  fraud and recover the amounts unequivocally owed.

## FIRST CAUSE OF ACTION

**Breach of Oral Contract**

**(Plaintiff against Arclight and Hamilton)**

22      22.    All previous allegations are realleged and incorporated herein by
23  reference.

24      23.    In September 2016, Hamilton orally promised Italia Film, on behalf of
25  Arclight and himself, to repay Italia Film the $500,000 it loaned Killer 10 Holdings
26  plus a 20 percent investment premium (which would increase to a 25 percent
27  investment premium if the original loan were not paid back within 9 months of the
28  release of the money to director Phillip Noyce). This oral agreement was

subsequently modified annually, as detailed above, to permit later performance/repayment by Arclight in one year increments.

24. Shortly thereafter, Italia Film transferred the $500,000 to Killer 10 Holdings for payment to Mr. Noyce. Upon information and belief, Arclight stood to benefit from this loan by the exploitation of *Killer 10*.

25. Italia Film was not repaid within 9 months of the release of the money to Mr. Noyce, and has still not been repaid.

26. As part of a further modification in early November 2022, Hamilton orally promised Italia Film, on behalf of Arclight and himself, to pay Italia Film its $500,000 and the promised premium within a year if Italia Film refrained from filing suit against Arclight within that year for breach of the previous agreements between the parties.

27. Arclight breached its promise, as amended, to Italia Film by failing to repay it the $500,000 plus a 25 percent investment premium by early November 2023 (except for the one credit of $100,000 mentioned above).

28. As a direct and proximate result of Arclight's breach, Italia Film seeks general and compensatory damages in an amount that is in excess of the minimum jurisdiction of this Court.

## SECOND CAUSE OF ACTION
### Breach of Guaranty Agreement
### (Plaintiff against Arclight)

29. All previous allegations are realleged and incorporated herein by reference.

30. On or about December 15, 2016, Arclight entered a written guaranty agreement with Italia Film promising to repay the $500,000 Arclight loaned to Killer 10 Holdings on or before September 30, 2017.

31. The agreement, which was signed by Hamilton stated, in part:

"If the Repayment Obligation becomes due, Arclight will satisfy it through licensing rights worth up to USD$500,000 for other non-related titles. This repayment will not take place any later than the anticipated start date of Principal Photography being 30 September 2017. This guarantee is provided as an inducement for Italia in entering into and performing that certain Development Investment Agreement between Italia and Killer 10 Holdings Pty Ltd, whereby Italia committed to advance $500,000 as a "hold fee" for Phillip Noyce's services as the director of the Picture."

32. This agreement was subsequently modified, as detailed above, to permit later performance/repayment by Arclight.

33. Arclight breached this agreement with Italia Film by failing to repay Italia Film the $500,000 by early November 2023 via the guaranty agreement as orally modified.

34. As a direct and proximate result of Arclight's breach, Italia Film seeks general and compensatory damages in an amount that is in excess of the minimum jurisdiction of this Court.

## THIRD CAUSE OF ACTION
### Fraud - Intentional Misrepresentation
### (Plaintiff against Hamilton and Arclight)

35. All previous allegations are realleged and incorporated herein by reference.

36. Defendants made representations of fact regarding repayment of $500,000 plus an investment premium of 25% to Italia Film in order to induce early payment from Italia despite knowing that the Film had no chance of being timely made. The purpose of these representations was to obtain an influx of capital that Arclight could use for other projects while *Killer 10* languished. Defendants by these representations promised such repayment to Italia Film if Italia Film made a

7
COMPLAINT

loan to an affiliated company, Killer 10 Holdings. This promise was initially made in 2016 but continued to be re-affirmed by Defendants repeatedly and as recently as 2023.

37. Defendants knew that these representations were false when they made them, or in the alternative, they made them these representations recklessly and without regard for their truth.

38. Italia Film reasonably relied on these representations when it loaned the $500,000 to Killer 10 Holdings.

39. As a direct and proximate result of Italia Film's reliance on Defendants' promises, Italia Film seeks general and compensatory damages in an amount that is in excess of the minimum jurisdiction of this Court.

40. Defendants' intentional misconduct was carried out with a conscious disregard for Italia Film's rights, with the intent to vex, annoy, and/or harass it and to unjustly profit at its expense. Such misconduct was unauthorized and constitutes fraud, oppression, and/or malice under California Civil Code § 3294, entitling Italia Film to an award of punitive damages in an amount appropriate to punish and/or set an example of the offending party in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Promissory Estoppel

### (Plaintiff against Arclight)

41. All previous allegations are realleged and incorporated by reference, as though fully set forth herein.

42. Italia Film alleges this claim as an alternative to its breach of oral contract cause of action.

43. Arclight made a promise in September 2016, which was clear and unambiguous in its terms, that it would repay Italia Film $500,000 plus a 25% percent investment premium on behalf of Killer 10 Holdings. Arclight subsequently

made additional promises modifying these terms and continuing the time frame in which repayment could be made.

44. Italia Film relied on these promises when it loaned the $500,000 to Killer 10 Holdings.

45. As a direct and proximate result of Italia Film's reliance on Arclight's promises, Italia Film seeks general and compensatory damages in an amount that is in excess of the minimum jurisdiction of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

(a) Compensatory and general damages;

(b) Pre- and post-judgment interest;

(c) Punitive damages on the third cause of action;

(d) Costs of this action; and

(e) Any other and further relief that the Court considers just and proper.

Dated: January 18, 2024        KIBLER FOWLER & CAVE LLP

By: _____
JOHN D. FOWLER
KEVIN J. CAMMISO
ZIEN HALWANI
Attorneys for Italia Film International SAL